[Cite as *State v. Friend*, 2016-Ohio-5868.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NOS. 26867 and 26868 |
| | : | |
| v. | : | T.C. NOS. 14CR3505 and 15CR0343 |
| | : | |
| JOHN P. FRIEND III | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___16th___ day of _____September_____, 2016.

. . . . . . . . . . .

ANN M. GRABER, Atty. Reg. No. 0091731, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

KRISTIN L. ARNOLD, Atty. Reg. No. 0088794, 1502 Liberty Tower, 120 W. Second Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} John P. Friend III appeals from judgments of the Montgomery County Court of Common Pleas in two separate but related cases. Collectively, the judgments found him guilty on his guilty pleas of two counts of rape (child under the age of 10), two counts of gross sexual imposition (child under the age of 13), and two counts of conspiracy to

commit murder; numerous other counts were dismissed. Friend received an aggregate prison term of 31 years and was designated as a Tier III sex offender. He contends on appeal that the trial court erred in imposing "excessive and consecutive sentences."

{¶ 2} For the following reasons, the judgments of the trial court will be affirmed, but we will remand for nunc pro tunc entries to correct the judgment entries.

## I. Facts and Procedural History

{¶ 3} In Case No. 2014-CR-3505, Friend was indicted on October 21, 2014 on two counts of rape of a child under the age of 10, two counts of gross sexual imposition of a child under the age of 13, one count of endangering children, and one count of aggravated menacing. These offenses involved allegations that Friend had engaged in mutual masturbation and fellatio with his eight-year-old stepson while the child's mother was not present, had forced the child to drink his own urine, and had threatened to cut the child's penis off with a scissors or to send him to foster care if he revealed the abuse.

{¶ 4} In Case No. 2015-CR-343, Friend was indicted on March 11, 2015 on four counts of conspiracy to commit murder, after a fellow inmate informed corrections officers that Friend was threatening to have the prosecutor in Case No. 2014-CR-3505, two detectives, the child (his stepson), and the child's father killed. After initially exploring the possibility of a "hit" with his cellmate (who informed authorities), Friend had enlisted an undercover Bureau of Criminal Investigations agent as the "hit man" to murder the child and the child's father and make it look like a robbery. Friend had also provided directions to the father's house, information about the victims' schedules, pictures of the father, the child, the father's house, and the father's truck, and had agreed to pay $5,000. Friend had stated, "no face, no case."

{¶ 5}  In Case No. 2014-CR-3505, Friend pled guilty to two counts of rape and two counts of gross sexual imposition; the charges of child endangering and aggravated menacing were dismissed.   The trial court sentenced Friend to 15 years to life on each of the rapes and to five years on each count of gross sexual imposition.   The trial court ordered the rape sentences to run concurrently to each other, and the sentences for gross sexual imposition to run concurrently to each other, but the sentences for gross sexual imposition to run consecutively with the sentences for rape.

{¶ 6}  In Case No. 2015-CR-343, Friend pled guilty to two counts of conspiracy to commit murder, and two other counts were dismissed.   The trial court sentenced Friend to 11 years on each count of conspiracy to commit murder, to be served concurrently to each other, but consecutively to the sentences in Case No. 14-CR-3505.

{¶ 7}  Friend's 15-year to life sentences for the rapes were mandatory sentences, but not maximum sentences.   The five-year sentences for gross sexual imposition and the 11-year sentences for conspiracy to commit murder were the maximum sentences allowed by law.

## II.   Imposition of Maximum and Consecutive Sentences

{¶ 8}  Friend argues that the trial court's "reasoning [was] insufficient to conclude that the seriousness of [Friend's] conduct demanded maximum sentences on all counts and consecutive sentences."

{¶ 9}  "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King,* 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.).   However, in exercising its discretion, a trial

court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard,* 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 10} R.C. 2929.11 requires trial courts to be guided by the overriding purposes of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 11} R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense; R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record.

{¶ 12}   After determining the sentence for a particular crime, a sentencing judge has discretion to order an offender to serve individual counts of a sentence consecutively. R.C. 2929.14(C)(4) provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds [1] that the consecutive service is necessary to protect the public from future crime or to punish the offender and [2] that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds [3] any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 13} In imposing consecutive sentences, the trial court must make the statutory

findings and incorporate them into its sentencing entry, but the trial court is not required to state reasons to support its findings. *State v. Bonnell,* 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.3d 659, ¶ 37. As stated by the Supreme Court, "a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29.

{¶ 14} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, Ohio Sup.Ct. Slip Opinion No. 2016-Ohio-1002, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. We do not review a trial court's sentence for an abuse of discretion. *Marcum* at ¶ 10.

*Maximum Sentences*

{¶ 15} Friend acknowledges in his brief that the trial court examined the statutory factors weighing on the seriousness of his offenses and his likelihood of recidivism. He also acknowledges that the conduct which led to his convictions "was both serious and severe," and that it was "punishable by lengthy prison terms." He asserts, however, that "every serious and severe offense does not warrant the maximum sentence," and that the trial court would not be vested by the legislature with any discretion if the legislature intended for the maximum sentence to be imposed "in every case."

{¶ 16} We agree with Friend's assertion that maximum sentences are not appropriate in every case, but this proposition does not support a conclusion that the maximum sentences imposed in this case were inappropriate. We also note that Friend did not receive the maximum sentence on his rape convictions; the maximum potential sentence on those counts was life without parole.

{¶ 17} The undisputed facts in this case are that Friend sexually abused a young child over a one-year period and that, when his behavior was discovered, he sought to eliminate key witnesses (including the child-victim) and the prosecutor prior to trial by hiring someone to kill them. Friend also threatened to cut off the child's penis if the child revealed the abuse and humiliated the child by forcing the child to drink urine. Friend persisted with his plan to hire someone to kill the child and his father, even when the undercover agent posing as a hit man gave Friend multiple opportunities to back out and emphasized the serious ramifications of the decision.

{¶ 18} According to the presentence investigation, the child has done well in counseling since the abuse was discovered, but suffered a significant regression when he learned of Friend's conspiracy to murder the child and his father. The child continues to have nightmares and is very afraid of Friend. Friend downplayed his culpability for the offenses, continued to claim that he was not attracted to young boys, and claimed that some of his threats toward the child were "jokes" that were misinterpreted.

{¶ 19} At the sentencing hearing, the trial court acknowledged Friend's military service and lack of a criminal record. However, it also found that Friend's crimes constituted "the most serious and worst form of the offenses that [he] could commit." The court found that the harm to the victim was exacerbated by his young age and by Friend's

position of trust and authority with respect to the child, that the victim had suffered physical and psychological harm that would likely last the rest of his life, that Friend used humiliation and threats against the child, and that, as if "that wasn't enough," Friend had then "meticulously planned" to murder the child and his father. Finally, the court found that, although Friend had taken some responsibility for his actions by entering a plea, he had not shown "serious remorse" for his actions.

{¶ 20} The trial court reasonably concluded that Friend's offenses were very serious and that substantial sentences were appropriate. Using the deferential standard of review articulated in R.C. 2953.08(G) and in *Marcum,* we cannot clearly and convincingly find that Friend's sentence was unsupported by the record.

{¶ 21} Alternatively, the State argues that this court lacks jurisdiction, at least in some respects, to review the trial court's imposition of Friend's sentence. The State relies on R.C. 2953.08(A)(1), which states:

(A) In addition to any other right to appeal and except as provided in division (D) of this section,[1] a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds:

(1) The sentence consisted of or included the maximum prison term allowed for the offense by division (A) of section 2929.14 or section 2929.142 of the Revised Code, the maximum prison term was not required for the offense pursuant to Chapter 2925. or any other provision of the Revised Code, and the court imposed the sentence under one of the

---

[1] Section (D) is not relevant to this appeal.

following circumstances:

> (a) The sentence was imposed for only one offense.

> (b) The sentence was imposed for two or more offenses arising out of a single incident, and the court imposed the maximum prison term for the offense of the highest degree.

**{¶ 22}** As the first sentence of the statute indicates, R.C. 2953.08 is not an exclusive basis for a right to appeal. R.C. 2953.02 gives a court of appeals jurisdiction to review all judgments in criminal cases. *See also* Ohio Constitution, Article IV, Section 3(B)(2). R.C. 2953.08 suggests that if a defendant is appealing convictions covered by subsections (A), (B), or (C) of that statute, the standard of review is whether the trial court's sentencing determination is clearly and convincingly unsupported by the record, not whether the court abused its discretion. The Supreme Court held in *Marcum* that the clear and convincing standard applies to all criminal sentencing appeals. *Id.* at ¶ 18-21. Thus, to the extent there is no other provision in the Revised Code that specifically limits R.C. 2953.02, R.C. 2953.08(A), (B), and (C) might be viewed as superfluous. On the other hand, R.C. 2953.08 could be read as itself limiting R.C. 2953.02 and setting forth the only grounds for appealing certain sentences, although *Marcum* seems to belie such an interpretation. However, having found that, to the extent that R.C. 2953.08(A) applies to Friend's sentence, the sentence is not clearly and convincingly unsupported by the record, we need not resolve these arguments here. We are unpersuaded by the State's assertion that we lack "jurisdiction."

*Consecutive Sentences*

**{¶ 23}** Friend also argues that the trial court's decision to impose consecutive

sentences was unsupported by the record. As stated above, he acknowledges that the court considered the principles and purposes of sentencing and weighed the seriousness and recidivism factors, as required by R.C. 2929.11 and R.C. 2929.12; it also considered the factors relevant to consecutive sentences, as set forth in R.C. 2929.14(C)(4). Friend disagrees with the manner in which the trial court weighed these factors. For example, he seems to contend that his military service, remorse, and lack of a criminal record were entitled to greater weight.

{¶ 24} In imposing consecutive sentences for some of the offenses, the trial court found that such sentences were necessary to protect the public from future crime, were not disproportionate to the seriousness of Friend's conduct and the danger he posed to the public, that the offenses were committed as part of a course of conduct, and that the harm caused by the multiple offenses was so great and unusual that no single prison term could adequately reflect the seriousness of his conduct.[2]

{¶ 25} In light the circumstances surrounding Friend's offenses, as set forth in the record and as discussed above, we cannot clearly and convincing find that the trial court's decision to impose consecutive sentences was unsupported by the record.

### III. The Judgment Entries

{¶ 26} Although not raised by the parties, our review of the trial court's record revealed a problem with the final judgments. The trial court's findings with respect to the imposition of consecutive sentences were stated at the sentencing hearing and included

---

[2] The trial court stated its findings with respect to imposition of consecutive sentences at the sentencing hearing and in a "Supplemental Termination Entry," which was filed one day before the Termination Entry in each case that specifically set forth the sentences. The existence of multiple judgments regarding sentencing will be discussed more below.

in a "Supplemental Termination Entry" filed in each case, which was comprised of check marks on a form document onto which Friend's name and the case number were hand-printed. This document was filed one day before the final Termination Entry in each case; the findings contained therein were not included in the final Termination Entries.

{¶ 27} In order to impose consecutive terms of imprisonment, a trial court is required to make the appropriate findings at the sentencing hearing and to incorporate those findings into its sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26 ("R.C. 2929.14(C)(4) requires the trial court to make statutory findings prior to imposing consecutive sentences, and Crim.R. 32(A)(4) * * * directs the court to state those findings at the time of imposing sentence.") Because the trial court speaks through its journal entries, it must incorporate the statutory findings into its sentencing entry. *Id.* at ¶ 30.

{¶ 28} We have held that a "trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court." *State v. Horobin*, 2d Dist. Montgomery No. 26639, 2015-Ohio-5300, ¶ 8, citing *State v. Graham,* 2d Dist. Montgomery No. 25934, 2014-Ohio-4250, ¶ 36. Such a correction of the final entry is required here in each case. The supplemental termination entries do not accomplish this purpose, because all of the required elements, including the sentence and findings relevant to it, must be incorporated into the judgment, and only one document can constitute a final appealable order. *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, ¶ 17; *State*

*v. Horobin,* 2d Dist. Montgomery No. 26639, 2015-Ohio-5300, ¶ 8.

**{¶ 29}** Thus, although we reject Friend's arguments that the sentences imposed by the trial court were unsupported by the record, we will remand for the trial court to correct its judgment entry in each case, so that it accurately reflects all of the trial court's findings.

**{¶ 30}** The assignment of error is overruled.

## IV.  Conclusion

**{¶ 31}** The judgments of the trial court will be affirmed.  The matter will be remanded for nunc pro tunc entries to include the trial court's findings with respect to consecutive sentencing in the final entries.

. . . . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Ann M. Graber
Kristin L. Arnold
Hon. Dennis J. Adkins